# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

KENNETH LUTZ and JANEL LUTZ,

        Plaintiffs,

vs.

GENERAL MOTORS CORPORATION --
PONTIAC DIVISION and
TRW AUTOMOTIVE HOLDINGS CORP.,

        Defendants.

No. C04-0078

**ORDER**

_____

This matter comes before the court pursuant to the following motions:

1.     Plaintiffs' July 1, 2005 motion to compel discovery and strike general objections and qualifications against GM (docket number 30).

2.     Plaintiffs' July 1, 2005 motion to compel discovery and strike general objections and qualifications against TRW VSSI (docket number 31).

3.     Plaintiffs' July 1, 2005 motion for protective order (docket number 32).

A hearing was held on these motions on August 23, 2005, at which plaintiffs were represented by Steven Crowly and Brad Brady. Defendant General Motors Corp. ("GM") was represented by Mickey Green and Mary Bolkcom. Defendant TRW VSSI was represented by Aneca Lasley and Greg Lederer. As set forth below, plaintiffs' motions are granted in part and denied in part.

## INTRODUCTION

This lawsuit arises out of a single vehicle rollover accident of a 2001 Pontiac Aztek near Cedar Rapids, Iowa on June 18, 2002. Plaintiff Kenneth Lutz was driving the Pontiac Aztek on that date when he lost control of the vehicle. Lutz claims he was wearing his seatbelt, which was provided by GM and manufactured by TRW VSSI, at the time of the accident. Nonetheless, Lutz was ejected from his vehicle during the single rollover accident and is now paraplegic.

Lutz's first theory of recovery is that his injuries were enhanced as a result of the failure of the seatbelt and retractor system to keep him restrained inside his vehicle. Lutz is also seeking to discover the possibility that a component of the 2001 Aztek failed (such as a steering or suspension component) that may have caused him to initially lose control of his vehicle.

Plaintiff claims that the retractor/seatbelt system used in the 2001 Aztek has also been installed in other vehicles, including others sold and manufactured by GM. Plaintiffs argue that defendants' responses to interrogatories and requests for production of documents, which were propounded on March 30, 2005, are inappropriate, unresponsive, and must be addressed so that discovery can proceed in an efficient and appropriate fashion.

GM resists plaintiffs' motion, arguing that plaintiffs' discovery requests go far beyond the scope contemplated or permitted by the Federal Rules of Civil Procedure, and that its responses to plaintiffs' requests are reasonable and appropriate, and its objections are well-taken. TRW VSSI likewise resists plaintiffs' motion, arguing that its objections are appropriate, and noting that it has not withheld any documents on the basis of privilege, thereby rendering moot plaintiffs' request that TRW VSSI produce a privilege log.

## MOTION TO STRIKE

GM's responses to plaintiffs' discovery requests contained the following "PREAMBLE":

> The vehicle involved in this case is a 2001 model year Pontiac Aztek, VIN 3G7DA03E41S546301. The subject vehicle is known internally as the General Motors GMT 250 program that was introduced in the 2001 model year, and remains in production into the current 2005 model year. The allegation involves the driver's seat belt performance during a rollover crash.

> The Aztek (GMT 250) shares a common vehicle architecture with the Buick Rendezvous. The Buick Rendezvous is known internally as the GMT 257 program. Like the Aztec [sic], the Rendezvous was introduced in the 2001 model year and remains in production into the current 2004 model year.

> The GMT 250/257 vehicle programs have different front seat outer seat belt restraint systems and different crash responses than other General Motors vehicle lines.

> In responding to Plaintiffs' discovery requests GM has included only information for the front outboard seat belt. The scope begins with the 2001 model year when the GMT 250/257 was introduced, and continues up to and includes the 2003 GMT 257 and 2005 GMT 250 ("vehicle scope"). The determination of scope and the documentation consequently produced in responding to discovery is for the purposes of discovery only and is not an admission by General Motors regarding their admissibility or responsiveness to the allegation made in this case. Once plaintiffs identify the specific component(s) of the subject vehicle that they allege are defective, GM may further refine this vehicle scope.

The responses of TRW VSSI contain the following "GENERAL OBJECTIONS":

> TRW reserves all proper objections to the materiality, relevance, and/or admissibility of the subject matter of the responses provided to Plaintiffs' discovery requests. All responses herein are made on the express reservation of the

3

general objections as set forth below as well as the objections listed in the individual responses. TRW's responses should not be considered a waiver of such objections. TRW specifically reserves all applicable privileges, in particular the attorney-client and work-product privileges, whether or not an objection based upon such privilege is specifically set forth in the individual responses.

1. TRW Automotive Holdings Corp. is not a proper party defendant to this litigation. To the extent a TRW entity is a proper party, the appropriate TRW entity is TRW Vehicle Safety Systems Inc. ("TRW"). Accordingly, TRW Automotive's responses to Plaintiffs' First Set of Interrogatories are made on behalf of TRW VSSI and are subject to an appropriate agreement or order substituting TRW VSSI for TRW Automotive.

2. TRW objects generally to the definitions included in the individual discovery requests to the extent they attempt to impose obligations that exceed the requirements set forth in the Federal Rules of Civil Procedure.

3. TRW objects to the definitions included in the individual discovery requests on the grounds that they seek information protected from disclosure by either the attorney-client privilege or the work-product doctrine. No such privileged information shall be disclosed.

4. TRW objects to Plaintiffs' discovery requests on the grounds that they are unduly burdensome, overbroad, and impermissibly vague.

5. TRW states that its responses to the discovery requests are based upon information known or believed by it to be true at the time of its response. TRW expressly reserves the right to amend its responses if it learns of new information applicable thereto through discovery, or otherwise, and it will supplement its responses to the extent required under the Federal Rules of Civil Procedure.

Plaintiff moves to strike GM's "PREAMBLE" and TRW VSSI's "GENERAL OBJECTIONS," arguing that the Federal Rules of Civil Procedure do not allow parties to lodge general objections or otherwise unilaterally qualify, limit, and/or dilute their duty to fully and fairly search and provide responsive information in a timely fashion. Plaintiff requests that GM's "PREAMBLE" and TRW VSSI's "GENERAL OBJECTIONS" be stricken, pursuant to Fed. R. Civ. P. 12(f) as immaterial and impertinent, and that defendants be ordered from interposing any further general objections and qualifications in future discovery responses. Alternatively, plaintiffs request that the court enter an order making it abundantly clear that such language interposed before answers to interrogatories or responses to requests for production is meaningless and has no effect on the defendants' respective duties to timely search for, produce, and disclose discoverable information, documents, and tangible things.

GM resists plaintiffs' motion, arguing that there is nothing improper about its "PREAMBLE," which sets out a reasonable definition of what it believes to be at issue based upon the pleadings and disclosures and provides a context and explanation for the specific responses to plaintiffs' many limitless demands. GM contends that its "PREAMBLE" explains the basis for its objections to plaintiffs' discovery requests that demand information about designs and vehicles that are not substantially similar to the design at issue in this case.

TRW VSSI resists plaintiffs' motion to strike its "GENERAL OBJECTIONS" as unnecessary. By letter dated June 24, 2005, counsel for TRW VSSI withdrew all "general objections" except for the one regarding the proper party defendant, which was not asserted to "define, limit, or dilute" its "duty of disclosure and discovery," but rather was a voluntary assumption of a duty of disclosure and discovery by the proper party defendant.

The fighting issue here is the appropriate scope of discovery. Plaintiffs argue that they should be allowed to discover all information pertaining to the seatbelt system and its

components, or substantially similar seatbelt systems/components, to those utilized in the GMT 250/257 programs, regardless of which GM vehicle they were installed in. Plaintiffs want information going back 20 years.

Defendants argue that the seat belt system is just one component of a vehicle's occupant restraint system, the function of which is affected by a vehicle's geometry and interior components, including other occupant restraint devices. See Affidavit of Jeff Jenkins, ¶ 15. Defendants argue that the final performance of a restraint system cannot be properly evaluated and validated by utilizing information from vehicles that are not similar in seat belt design and architecture, i.e., both the architecture and seat belt systems of the vehicles must be similar in order for information relating thereto to be relevant and discoverable. See Affidavit of Gerald Cooper, ¶ 15. As only the Aztek and the Rendezvous have the same vehicle architecture, defendants argue that discovery should be limited to those two vehicle programs.

The parties agree that the restraint system at issue contains an Emergency Locking Retractor (ELR), which allows movement of the belt webbing in normal use until a crash or other event occurs which causes the retractor to lock. See Cooper affidavit, ¶ 11(A); Jenkins affidavit, ¶ 5; affidavit of Louis D'Aulerio, ¶ 3. It is also equipped with a web loop device, which consists of a loop of webbing folded over itself and held in place by stitches. See Jenkins affidavit, ¶ 7. The purpose and design of web loops vary, i.e., it may serve as an indicator of loading, a means for managing crash energy, or a means for controlling occupant kinematics in a crash. See Cooper affidavit at ¶ 11(C). Defendants contend that the web loop device at issue was only intended to serve as an indicator of loading, i.e., to notify the occupant that the seat belt needed to be replaced, and not to reduce the crash forces experienced by the occupant. See Jenkins affidavit, ¶ 7.

The court is not convinced that discovery should be limited according to vehicle geometry or architecture, as argued by the defendant. Nor is the court convinced that the plaintiffs need 20 years of information in order to prosecute their claims. Therefore,

discovery in this case shall include, for a five-year period of time preceding the date of the accident, information relating to all ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading, including, but not limited to: testing documentation, evaluations, failure documentation (either retractor failure or excessive slack introduction); development and design history; documentation comparing these designs (both of the ELR-style retractor and web loop) to other alternatives and/or stating reasons for ultimate choice of designs; and claims alleging partial or complete ejecting during a rollover accident due to seatbelt or seatbelt component failure in any vehicle with an ELR-style retractor and web loop design to indicate loading. Any information relating to seatbelt failure in either the Aztek or the Rendezvous shall be produced to the present time.

With the parameters of discovery now defined in this case, the court strikes GM's "Preamble" to its discovery responses. TRW VSSI voluntarily withdrew its "General Objections," thereby rendering moot plaintiffs' motion to strike.

## MOTION TO COMPEL GM

Keeping within the parameters of discovery outlined above, the court rules as follows on the specific disputed discovery requests relating to defendant GM.

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| Interrogatory No. 1 | Name & contact information for people with knowledge & discoverable information & subject of information. | Compelled with respect to all GM employees with knowledge of ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| Interrogatory No. 2 | GM's trial witnesses & anticipated testimony. | Denied as premature. All parties shall identify trial witnesses and anticipated testimony in accordance with the proposed final pretrial order. |
| Interrogatory No. 4 | Facts, witnesses & documents supporting affirmative defenses. | Denied. Overbroad. Response would reveal attorney evaluation whether documents support a defense, which is protected by the work product privilege.[1] |
| Interrogatory No. 5 | Information re: "state of the art" defense. | Compelled to the extent that GM shall detail the "engineering practices" in the industry that give rise to a "state of the art" defense. |
| Interrogatory No. 6 | Plaintiff's negligence and/or comparative fault. | Denied. Response provided is sufficient. |
| Interrogatory No. 7 | Seatbelt systems incorporating pretensioners, web grabbers, devices designed to take up slack. | Compelled as to GM. |
| Interrogatory No. 8 | Studies, research, evaluations, crash tests, etc. re: minimizing or reducing seatbelt slack. | Compelled. |

---

[1] See Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986); Sporck v. Peil, 759 F.2d 312 (3d Cir.), cert. denied, 474 U.S. 903 (1985).

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| Interrogatory No. 10 | Name & contact information of people with knowledge re: GM's seatbelts assembly, testing, similar claims. | Compelled as to GM relating to all ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading. |
| Interrogatory No. 11 | Standards, design goals, safety performance criteria, cost considerations employed by GM and/or TRW in Lutz vehicle. | Compelled. Objection set forth at the end of response is overruled. |
| Interrogatory No. 14 | Persons who did vehicle inspection of Lutz's 2001 Aztek - date, location, photographs, etc. | Denied. Response provided is sufficient. |
| RFP No. 8 | Assembly drawings, documents for driver's side occupant restraints for 2001 Aztek. | Compelled. |
| RFP No. 9 | FMVSS certification documentation for 2001 Aztek for FMVSS 208, 209, and 210. | Compelled. |
| RFP No. 10 | GM's Uniform Test Specs. re: FMVSS 208, 209, 210 for 2001 Aztek. | Compelled. |
| RFP No. 11 | "Malibu I and Malibu II" studies, reports, photos, data, video. | Compelled. |
| RFP No. 12 | CRIS testing reports, photos, data, video. | Compelled. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 13 | All other documents supporting GM's claims, defenses, excluding impeachment. | Denied. Response would reveal attorney evaluation whether documents support a defense, which is protected by the work product privilege. <u>See</u> footnote 1. |
| RFP No. 16 | All information which mentions the plaintiffs, not received from plaintiffs or their attorneys. | Compelled as to all information except that for which GM claims work product privilege. All withheld documents must be identified in a privilege log. |
| RFP No. 17 | All information depicting scene of accident, vehicle after accident, seatbelt before, during or after crash, location or orientation of plaintiff's vehicle or body after collision. | Compelled as to all photographs and drawings made at the scene of the accident. Otherwise denied as work product. <u>See</u> footnote 1. |
| RFP No. 18 | Correspondence, memos, reports, etc. relating to testing of safety belt restraint system in 2001 Aztek. | Compelled. |
| RFP No. 19 | Preliminary & final cost info. re: safety belt restraint system in 2001 Aztek. | Compelled as to the final cost of the safety belt restraint system used in the 2001 Aztek. |
| RFP No. 20 | Reports, evaluations, videos, photos, data from dynamic testing of this design, including sled, crash and rollover tests of safety belt restraint system in 2001 Aztek. | Compelled. |
| RFP No. 21 | Development, testing & evaluation studies for web loop for the safety belt restraint system in the 2001 Aztek. | Compelled. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 22 | Development, testing & evaluation studies for removal or revision of web loop in the seat belt system now available as replacement for 2001 Aztek system. | Compelled. |
| RFP No. 23 | Documents relating to revisions in 2001 Aztek safety belt system, Buick Rendezvous and GMT 250/257, following installation in Lutz vehicle. | Compelled. |
| RFP No. 24 | Documents relating to revisions in Buick Rendezvous seat belt systems beginning in 2004 model. | Compelled. |
| RFP No. 28 | Document, film, video, photo, etc. of any claim or incident that is substantially similar to Lutz incident involving any GM vehicle that is substantially similar to Lutz's vehicle. | Compelled as to documents involving any rollover accident with partial or full ejection of a belted occupant in any GM vehicle utilizing an ELR-style retractor and also having a web loop design intended only to indicate loading. |
| RFP No. 29 | Documents relating to chain of custody of Lutz vehicle from time of accident to present. | Compelled. |
| RFP No. 30 | Documents relating to design & testing of web loop for the safety belt restraint system in 2001 Aztek, Buick Rendezvous, & GMT 250/257. | Compelled. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 31 | "FAILUREA GM Information Management System" including "Virtual Partner Narratives," "LawPack" or equivalents involving injuries/accidents related to seat belts, front seat and/or front seat restraint system in GM passenger cars including, but not limited to, matters coded as PL6 (crashworthiness), PL65 (Passive Belts, Door Opens/Eject), FM (Failure or Malfunction), Eject (Ejection), ID (Improper Design). | Denied. The court does not know what the "FAILUREA GM Information Management System" is. The court does not know whether the requested information are documents or an index or data compilation, or how it is even relevant to the claims herein. |
| RFP No. 32 | GM's Discovery Review Reports for actions involving allegations of fault for failing to properly design seat belt, front seat and/or front seat restraint system in GM passenger cars including, but not limited to, PL6 (crashworthiness), PL65 (passive belts, door opens/ejects), FM (failure or malfunction), Eject (ejection), ID (improper design). | Denied. The court does not know what Discovery Review Reports are. The court does not know whether the requested information are documents or an index or data compilation, or how it is even relevant to the claims herein. |
| RFP No. 33 | GM's "Inventory of Produced Document Report(s)" or similar output from "Case Inventory System" in cases involving allegations concerning seat belts, front seat and/or the front seat restraint system in GM passenger cars. | Denied. The court does not know what "Inventory of Produced Document Report(s)" are. The court does not know whether the requested "inventory" refers to documents or an index or data compilation, or how it is even relevant to the claims herein. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 34 | GM's CPIR database(s) and files, including MIC files and reports. | Denied. The court does not know what GM's CPIR databases are, or how they are even relevant to the claims herein. |
| RFP No. 35 | GM's 1241 reports. | Denied. The court does not know what GM's 1241 reports are. The court does not know whether the requested reports are documents or an index or data compilation, or how they are even relevant to the claims herein. |
| RFP No. 36 | GM's ESIS files, records & reports. | Denied. The court does not know what GM's ESIS files are. The court does not know whether the requested files include documents or an index or data compilation, or how they are even relevant to the claims herein. The request is also impermissibly broad and unduly burdensome. |
| RFP No. 37 | GM's Corporate Research Library Information System, FARLIB and Horizon. | Denied. The court does not know what either GM's Corporate Research Library Information System, FARLIB, or Horizon is. The court does not know whether the requested information include documents or an index or data compilation, or how they are even relevant to the claims herein. The request is also impermissibly broad and unduly burdensome. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 38 | GM's MINS databases including, but not limited to activities of the Safety and Restraint Center Council. | Denied. The court does not know what GM's MINS databases are. The court does not know whether databases include documents or an index or data compilation, or how they are even relevant to the claims herein. The request is also impermissibly broad and unduly burdensome. |
| RFP No. 41 | EPP for 2001 Aztek or GMT 250/257 program vehicles including, but not limited to, PDMs, PADs, or PASs applicable to the seat belt, front seat and/or the front seat restraint system on GM passenger cars. | Denied. GM has represented that no such document exists, but that a Program Plan Book exists, which shall be produced. |
| RFP No. 42 | GM Engineering Staff Microfilm Index and Microfilm Project Files for 2001 Aztek or GMT 250/257 program vehicles, relating to the seat belt, front seat and/or the front seat restrain system. | Compelled. |
| RFP No. 43 | Package and engineering drawings of the seat belt for the 2001 Aztek, Buick Rendevous and GMT 250/257 program vehicles. | Compelled. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 44 | Settlement agreements involving injuries caused by defective seat belt, front seat and/or front seat restraint system of the Pontiac Aztek and the Product Model/Series in question. | Denied as not reasonably calculated to lead to the discovery of admissible evidence. |

## MOTION TO COMPEL TRW VSSI

Keeping withing the parameters of discovery outlined above, the court rules as follows on the specific disputed discovery requests relating to defendant TRW VSSI.

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| Interrogatory No. 1 | Name & contact information for people with knowledge & discoverable information & subject of information. | Compelled.  TRW VSSI shall provide information regarding all TRW employees having knowledge and/or discoverable information relating to ELR-style retractors sold for installation in any GM vehicle also having a web loop design intended only to indicate loading.[2] |

---

[2] The court knows that there is more than one person at TRW VSSI with discoverable information about the claims made herein.  Although providing one name was more than TRW VSSI did in most of its responses, that does not make it right.  This case is already contentious enough.  Refusing to provide clearly discoverable information only compounds the problem.

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| Interrogatory No. 2 | TRW's trial witnesses, anticipated testimony, etc. | Denied as premature. All parties shall identify trial witnesses and anticipated testimony in accordance with the proposed final pretrial order. |
| Interrogatory No. 4 | Facts, witnesses & documents supporting affirmative defenses. | Denied. Response would reveal attorney evaluation whether documents support a defense, which is protected by the work product privilege. See footnote 1. |
| Interrogatory No. 5 | Information re: "state of the art" defense. | Compelled to the extent that TRW VSSI shall detail the "engineering practices" in the industry that give rise to a "state of the art" defense. |
| Interrogatory No. 6 | Plaintiff's negligence and/or comparative fault. | Compelled. |
| Interrogatory No. 7 | Seatbelt systems incorporating pretensioners, web grabbers, devices designed to take up slack. | Compelled. |
| Interrogatory No. 8 | Studies, research, evaluations, crash tests, etc. re: minimizing or reducing seatbelt slack. | Compelled as to information relating to all ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading. |
| Interrogatory No. 10 | People with knowledge re: TRW's performance & testing standards for seatbelt assemblies in past 15 years; similar instances in last 20 years. | Compelled as to the seatbelt assembly at issue herein. Objection overruled. See Footnote 2. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| Interrogatory No. 11 | Standards, design goals, safety performance criteria, cost considerations employed by TRW in Lutz vehicle. | Compelled. Objection overruled. |
| Interrogatory No. 14 | Persons who did vehicle inspection of Lutz's 2001 Aztek - date, location, photographs, etc. | Denied. Response provided is sufficient. Further response would reveal attorney evaluation regarding defense of lawsuit, which is protected by the work product privilege. See footnote 1. |
| RFP No. 1 | Information & documents referenced in initial disclosures. | Compelled. |
| RFP No. 2 | Contracts/agreements between TRW & GM concerning the subject seat belt assemblies and substantially similar designs for last 15 years. | Compelled as to contracts and/or agreements relating to all ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading. |
| RFP No. 3 | Warranty information, design history, engineering changes and recall information concerning subject design and substantially similar designs. | Compelled as to documents involving ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading. |
| RFP No. 4 | Visual recordings of subject vehicle. | Compelled. |
| RFP No. 5 | Correspondence, claims, notices, etc. in which it was reported or alleged that the subject design failed to restrain a person in any kind of crash. | Compelled as to documents involving ELR-style retractors installed in any GM vehicle also having a web loop design intended only to indicate loading. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 6 | Assembly drawings & product assembly documents for major components of driver's side occupant restraints for 2001 Aztek. | Compelled. |
| RFP No. 7 | Information generated by testing and evaluation of seatbelt design in plaintiff's vehicle, i.e., failure mode testing & dynamic testing. | Compelled. |
| RFP No. 8 | Insurance and indemnity agreements between GM & TRW applicable to this case. | Compelled. |
| RFP No. 9 | All other documents supporting TRW's claims, defenses, excluding impeachment. | Denied. Response would reveal attorney's evaluation whether documents support a defense, which is protected by the work product privilege. See footnote 1. |
| RFP No. 10 | Photos, videos, documents reflecting measurements taken or calculations made during inspection of Lutz vehicle. | Compelled as to all photographs except those for which TRW VSSI claim work product privilege. All withheld documents must be identified in a privilege log. |
| RFP No. 11 | CV's & documents relating to previous expert testimony from persons inspecting Lutz vehicle on 3/8/05. | Denied as premature. Requested documents shall be disclosed in connection with expert witness disclosures. |
| RFP No. 12 | All information which mentions the plaintiffs, not received from plaintiffs or their attorneys. | Compelled as to all information except that for which TRW VSSI claim work product privilege. All withheld documents must be identified in a privilege log. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 13 | All information depicting scene of accident, vehicle after accident, seatbelt before, during or after crash, location or orientation of plaintiff's vehicle or body after collision. | Compelled as to all photographs and drawings made at the scene of the accident. Otherwise denied as work product. |
| RFP No. 14 | Preliminary & final cost info. re: safety belt restraint system in 2001 Aztek. | Compelled. |
| RFP No. 15 | Reports, evaluations, videos, photos, data from dynamic testing of this design, including sled, crash and rollover tests of safety belt restraint system in 2001 Aztek. | Compelled. |
| RFP No. 16 | Information re: development, testing & evaluation of the web loop portion of the safety belt restraint system in the 2001 Aztek. | Compelled. |
| RFP No. 17 | Development, testing & evaluation studies for removal or material changes of the web loop in the seat belt system now available as replacement for 2001 Aztek system. | Compelled. |
| RFP No. 18 | Documents relating to revisions in 2001 Aztek safety belt system, Buick Rendezvous and GMT 250/257, before or after installation in Lutz vehicle. | Compelled. |

| DISCOVERY REQUEST | DESCRIPTION | RULING |
|---|---|---|
| RFP No. 19 | Documents relating to revisions in Buick Rendezvous seat belt systems beginning in 2004 model. | Compelled. |
| RFP No. 20 | Documents/information supporting affirmative defenses. | Denied. Response would reveal attorney evaluation whether documents support a defense, which is protected by the work product privilege. See footnote 1. |
| RFP No. 21 | Documents, films, videos, etc. not generated by TRW which establishes absence of negligence, fault, etc. by TRW. | Denied as overbroad. |
| RFP No. 22 | Documents, films, videos, etc. re: substantially similar claims and vehicles. | Compelled as to documents relating to any rollover accident involving partial or full ejection of a belted occupant in any GM vehicle utilizing an ELR-style retractor and also having a web loop design intended only to indicate loading. |
| RFP No. 23 | Documents relating to chain of custody of Lutz vehicle from time of accident to present. | Compelled. |

## MOTION FOR PROTECTIVE ORDER & DISCOVERY CONFERENCES

On June 16, 2005, plaintiffs' counsel received a letter from GM's counsel accompanying deposition notices for plaintiff's three expert witnesses, i.e., David J. Bilek was noticed for a June 30, 2005 deposition in Denver, Colorado, Louis D'Aulerio was noticed for a July 6, 2005 deposition in Philadelphia, Pennsylvania, and Dennis Shanahan,

M.D., was noticed for a July 13, 2005 deposition in Carlsbad, California. No prior attempt was made to determine the availability on these dates of either plaintiffs' counsel or the experts. Plaintiffs seek a protective order, pursuant to <u>Fed. R. Civ. P.</u> 26(c)(2) that the defendants shall not notice the depositions of plaintiffs' experts until 30 days after: (1) defendants have meaningfully and completely responded to plaintiffs' discovery requests; (2) plaintiffs have had the opportunity to depose both defendants' "fact" employees, and 30(b)(6) representatives; and (3) defendants have disclosed their own expert witnesses' opinions. Plaintiffs also requests that the court conduct regular discovery conferences to monitor the progress of discovery in this case, with the parties reporting the status, either jointly or separately, not less than 10 days prior to each discovery conference.

Defendants resist plaintiffs' motion, arguing that supervised discovery is not necessary, and that there is no need for a protective order regarding expert discovery as defendants are ready, willing, and able to coordinate all discovery with the plaintiffs, including expert depositions.

Plaintiffs' motion for supervised discovery is denied. At the hearing, defendants agreed to stage discovery in a sensible fashion. Thus, plaintiffs' motion for protective order is granted with respect to the depositions complained of. The parties are strongly encouraged to cooperatively develop and submit for court approval a reasonable discovery plan.

Upon the foregoing,

IT IS ORDERED that:

Plaintiffs' July 1, 2005 motion to compel discovery and strike general objections and qualifications against GM (docket number 30) is granted and denied as set forth above with respect to the motion to compel. Plaintiffs' motion to strike is granted. Plaintiffs' July 1, 2005 motion to compel discovery and strike general objections and qualifications against TRW VSSI (docket number 31) is granted and denied as set forth above with

respect to the motion to compel. Plaintiffs' motion to strike is denied as moot. Plaintiffs' July 1, 2005 motion for protective order and supervised discovery (docket number 32) is granted with respect to the protective order and denied with respect to the request for supervised discovery.

August 29, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT